UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRISCILLA ERVE

        Plaintiff,

v.                                                                      Case Number: 13-12608
                                                                      Honorable Julian Abele Cook, Jr.

HENRY FORD COMMUNITY COLLEGE,
GAIL MEE, MARJORIE SWAN, and
LISA HARRIS

        Defendants.

## ORDER

On June 14, 2013, the Plaintiff, Priscilla Erve, filed a *pro se* complaint against Henry Ford Community College ("Henry Ford") and three of its officers – Gail Mee, Marjorie Swan, and Lisa Harris – alleging a violation of her civil rights under 42 U.S.C. § 2000(d) and 42 U.S.C. § 1983.[1] The Plaintiff contends that she was denied admission to Henry Ford on the basis of a discriminatory practice designed to preclude African Americans from enrolling in certain programs at the college.

Currently before the Court is the Defendant's motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). In addition, the Plaintiff has filed a motion seeking the appointment of counsel. The Court considers each in turn.

---

[1] This matter is a companion to a case previously filed by the Plaintiff and dismissed by this Court on February 13, 2014. *See Erve v. U.S. Dept. of Education,* Case No. 2:13-cv-11617.

I.

In April of 2009, the Plaintiff maintains she was denied admission to Henry Ford's medical assistant program because of a restriction placed on her account by the individual Defendants in this matter. The genesis of this restriction appears to revolve around the Plaintiff's refusal to satisfy certain academic prerequisites established by Henry Ford in order to be considered for the program. More specifically, Henry Ford requires, *inter alia,* every applicant to demonstrate a certain level of reading ability. Usually this is accomplished by way of an assessment test, but the Plaintiff maintains that she is exempt from this requirement in light of course credits she earned at Wayne County Community College. Ultimately, Henry Ford refused to accept the Plaintiff's credits in lieu of the reading assessment test, which, according to the Plaintiff, is because "Caucasians at . . . [the] College are still utilizing Jim Crow's literacy tests," (Plf's Resp. 4, ECF No. 23).

Two years later, in May 2011, the Plaintiff attempted to enroll in Henry Ford's medical insurance specialist program but was unable to do so in light of the restriction on her account. The Plaintiff alleges that she discussed the matter with Lisa Jones (Vice President of Academic Affairs) and was told that the restriction would not be removed because "she was not suitable for Henry Ford Community College." (*Id.*). On June 13, 2013, the Plaintiff filed the instant suit alleging, *inter alia*, that the Defendants "violated her legal rights to obtain an education by intentionally restricting [her] from a public community college because [she] openly challenged Caucasian staff in the college's admission office about Henry Ford['s] . . . racially hostile environment." *Id.* The Plaintiff has premised her claims of discrimination and retaliation under 42 U.S.C. § 2000(d) and 42 U.S.C. § 1983.

II.

A Rule 12(c) motion for judgment on the pleadings may be treated in the same manner as a motion to dismiss under Rule 12(b)(6). *Mixon v. Ohio,* 193 F.3d 389, 399 (6th Cir. 1999). Such a request for relief should be granted only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (citation and internal quotation marks omitted). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (citation and internal quotation marks omitted). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (citation and internal quotation marks omitted).

When considering a 12(b)(6) or 12(c) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10 (c)). "In determining whether to grant a Rule 12(b)(6) motion, the court [should primarily consider] the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (applying *Amini*, 259 F.3d at 502, in the context of a Rule 12 (c) motion (citation and internal quotation marks omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the [Plaintiffs'] complaint and are central to [their] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

### III.

Although the Court must construe a *pro se* plaintiff's complaint liberally, *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996), it cannot "explore exhaustively all potential claims" lest it take on the "improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A review of the Plaintiff's pleadings in this matter suggests that she is asserting a right to relief under three separate causes of action. First, the Plaintiff alleges that the Defendants racially discriminated against her by requiring her to take a reading assessment test in violation of Title VI of the Civil Rights Act. Second, and also premised under Title VI, she maintains that Henry Ford placed a restriction on her account in retaliation for speaking out about the discriminatory nature of their admissions policies. Finally, and stemming from the conduct thus described, the Plaintiff generally asserts an equal protection violation claim under 18 U.S.C. § 1983.

As a preliminary matter, the Defendants' argue that the school officials named in the Plaintiff's complaint–Mee, Swan, and Harris–must be dismissed on the grounds that Title VI does not provide for a cause of action against individuals. Under Title VI,

> No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under *any program or activity* receiving Federal financial assistance. 42 U.S.C. § 2000d (emphasis added).

4

Importantly, the Sixth Circuit has held that the "any program or activity" language in Title VI necessarily implies that there is no individual liability under the statute. *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996); *see also Soper v. Hoben,* 195 F.3d 845, 854 (6th Cir.1999) (The district court correctly dismissed defendants in their individual capacities from plaintiff's claims under Title IX because, like Title VI, "only recipients of federal funds may be liable for damages."). Moreover, even assuming, *arguendo*, that the Plaintiff was suing the individuals in their official capacities, the Supreme Court has been clear that, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985). Here, the Plaintiff has named both Henry Ford and several of its officials in her complaint. As such, the Court finds that the claims against the individual Defendants must be dismissed.

Moving next to the claims against Henry Ford, the Plaintiff argues first that she was discriminated against on the basis of race when was she prohibited from enrolling in the college's medical insurance specialist program for refusing to take the reading assessment test. In order to establish a discrimination claim under Title VI, the Plaintiff "must demonstrate that the decision to exclude [her] from . . . [the program] was motivated by race and that [her] race was a determining factor in the exclusion." *Buchanan*, 99 F.3d 1352, 1356 (6th Cir.1996). A plaintiff may rely on direct or circumstantial evidence to establish racial discrimination under Title VI. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580-81 (6th Cir.1992). Direct evidence generally requires "unmistakable verbal assertions that the plaintiff was treated adversely because of h[er] race." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998).

The only direct evidence offered by the Plaintiff in support of her race discrimination claim is a statement allegedly made by Dorothy Rothgery that "African Americans with degrees can only read at a 10th grade level." (Plf's Resp. 2). Even assuming, *arguendo*, that this comment was made, it had no bearing on the decision to deny the Plaintiff's admission to the program. Indeed, the reading assessment test–which the Plaintiff refused to take–was required of all applicants seeking admission to the program. In other words, the Plaintiff's application was never actually denied on the merits because she failed to satisfy the prerequisites to admission. Moreover, even if the Court were do construe Rothgery's comment as racially derogative, "offensive or insensitive stray statements are not enough to demonstrate direct evidence of intentional discriminatory motive." *Phelps v. Yale Sec., Inc*., 986 F.2d 1020, 1025-26 (6th Cir.1993).

Where, as here, the Plaintiff has failed to proffer any direct evidence of discrimination, the analysis must proceed according to the often-quoted burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination under this methodology, the Plaintiff must show: "(1) that [s]he is a member of a protected class; (2) that [s]he was qualified for the [program]; (3) that [s]he suffered an adverse decision; and (4) that similarly situated non-protected [applicants] were treated more favorably." *Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 508 (6th Cir. 2003). Here, the Plaintiff has failed to allege any facts suggesting that (1) she was qualified for the program, or (2) similarly situated non-protected applicants were treated more favorably. As such, the Court finds that the Plaintiff has failed to state a claim for discrimination that is plausible on its face. *Twombly*, 550 U.S. at 548.

Nor does the Plaintiff's retaliation claim fare any better. The same direct/circumstantial evidentiary framework from *McDonell Douglas* and its progeny applies here. The Court begins by noting that the Plaintiff does not present any direct evidence of retaliation–such as an explicit statement from a Henry Ford employee that a restriction was placed on her account in light of her discrimination accusations–and, as such, her claim is analyzed under the *McDonnell Douglas* burden-shifting analysis. To establish a *prime facie* case of retaliation, the Plaintiff must establish that (1) she engaged in a protected activity, (2) Defendants knew of her protected activity, (3) Defendants thereafter took an adverse action against her, and (4) there is a causal connection between the protected activity and the adverse action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Here, the Plaintiff has failed to allege facts suggesting a causal connection between her complaint and the restriction placed on her account. In fact, the Plaintiff's pleadings suggest that she raised accusations of discrimination to Henry Ford officials only *after* a restriction was placed on her account. As such, the Plaintiff's retaliation claim must and does fail.

Finally, the Court finds that the Plaintiff's equal protection claim under 42 U.S.C. § 1983 fails for the same reasons identified throughout this Opinion and Order. Indeed, in order to maintain a viable equal protection claim, the Plaintiff must show that similarly situated non-protected applicants were treated more favorably. *Village of Willowbrook v. Ollech*, 528 U.S. 562, 564 (2000). The Plaintiff has failed to allege that the prerequisites required for entry into the program were selectively enforced, let alone a suggestion that she was treated differently than any of the other applicants. "[A]bsent intentional discrimination or a similarly situated person of another race who was treated differently, [the Plaintiff cannot] prevail on h[er]

equal-protection theory . . . . " *Sudduth v. Donnelly*, 367 F. App'x 703, 705 (7th Cir. 2010). This claim is likewise dismissed.

In addition to the Plaintiff's failure to satisfy the pleading standard required under the Federal Rules, her claims are also time barred by the statute of limitations. Michigan's three-year statue of limitations for personal injury actions govern claims brought under Title VI. *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) ("all of the circuits deciding the issue have uniformly applied the state personal injury limitations period."); *see also* Mich. Comp. Laws. § 600.5805, ("the period of limitation is *3 years* after the time of death or injury for an action to recover damages for the death of a person, *or for injury to a person or property*." (emphasis added). While the court calculates the statute of limitations for a civil rights claim according to state personal injury law, federal law determines when the time begins to run. *Ruff v. Runyon*, 258 F.3d 498, 500-501 (6th Cir. 2001). Under federal law, the clock begins when the plaintiff knew or should have known of the injury through an exercise of reasonable diligence. *Id.*

Here, the alleged discriminatory act occurred in April of 2009 when the Plaintiff was "denied enrollment in Henry Ford Community College's Medical Assistant Program because [of] a restriction . . . placed on [her] account." (Complaint 4). Thus, in April 2009, the Plaintiff knew or had reason to know of the injury she now complains of. However, she waited until June 2013–over four years after her claims accrued–to file suit. As such, the Court finds that the Plaintiff's civil rights claims are also time barred.

IV.

The Court now considers the Plaintiff's request for appointment of counsel. Appointment of counsel in a civil case is "a privilege that is justified only by exceptional circumstances."

*Lavado v. Keohane*, 992 F.2d. 601, 606 (6th Cir. 1993). "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'" *Id.* (citations omitted). Moreover, appointment of counsel is not appropriate when a *pro se* litigant's chances of success are extremely slim. *Id.*

Having considered the Plaintiff's request for counsel in light of these principles, the Court finds that exceptional circumstances do not exist. Indeed, the issues are relatively straightforward and the disposition here turns on the simple fact that (1) the Plaintiff has failed to sufficiently allege that her civil rights were violated, and (2) the statute of limitations has elapsed. In sum, "the Court does not base its decision today on any legal niceties which would benefit from the assistance of counsel." *Turner v. Bressler*, 06-CV-276-GFV, 2007 WL 2847948, *6 (E.D. Ky. Sept. 28, 2007). As such, the Plaintiff's request must be and is denied.

V.

For all of the reasons thus mentioned, the Defendants' motion for a judgment on the pleadings is granted (ECF No. 18), and the Plaintiff's motion for the appointment of counsel is denied (ECF No. 25). This Order closes the case in its entirety.

IT IS SO ORDERED.


Date: September 22, 2014               s/Julian Abele Cook, Jr.
                                       JULIAN ABELE COOK, JR.
                                       U.S. District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 22, 2014.

<u>s/ Kay Doaks</u>
Case Manager